GebeN, J.
delivered the opinion of the court.
This bill is filed by the persons named as legatees in a will executed by the late Susannah McKisick, wife of the defendant Spivy, to set up her will and to obtain the property therein devised to them.
The property in controversy belonged to the late James Peters, and was by him devised, in his last will, to his daughter Susannah, in the following terms, viz: “I give and bequeath to my daughter Susannah McKisick, the following negroes, to-wit, Aaron, Charlotte, Jefferson, Eliza, Peter, and Esther the daughter of Charlotte, and' Susan, in the manner following: It is my will and desire that she have the benefit of said negroes, either by keeping them in specie, or selling them and having the proceeds of such sale. But I will and direct that they be sold in the neighborhood of my present residence, as I do not wish them to be carried to a distance, if she should choose to sell them. And the said negroes and their increase, or said money to arise from the sale of them, to be hers forever, to be disposed of as she may think proper, amongst her children or grand children, by will or otherwise.”
At the death of James Peters, the testator, the negroes went into the possession of McKisick and wife, and Mrs. McKisick exercised control and ownership over them, hiring them out, and taking notes payable to herself, and otherwise assuming to be the separate owner of them, without any objection on the part of her husband; and at her death in 1840, she made a will, devising *633 them to the complainants, but which will, the defendant has not permitted to be proved.
1. The first question is, whether this will is to be understood as giving the property to Mrs. McKisick for her separate use. It is certainly true that if the testator intended by this bequest, that the property devised should be a separate estate, for the sole use of Mrs. McKisick, this court should carry that intention into effect. 2 Kent’s Com. 162.
But this intention must distinctly appear, by the use of expressions that plainly denote an exclusion of the husband, or a direction as to the enjoyment of the property, incompatible with his dominion over it. Clancy- on Rights, 262. The testator says: “It is my will that she have the benefit of the said negroes, either by keeping them in specie, or selling them, and having the proceeds of the sale.” Now what is there in this language that indicates he intended them for her separate use?
There is no expression denoting an exclusion of the husband’s marital rights, nor any direction as to the enjoyment of the property, inconsistent with his dominion over it. The expressions, that he gives to his daughter, that she have the benefit of the negroes by keeping or selling them, cannot be construed to convey the meaning that the husband- was to be excluded. The employment of his daughter’s name in the bequest, and not that of her husband, is the almost universal practice of testators.
It is on her account the bequest is made, and in this last act of affectionate solicitude for her temporal welfare, it is perfectly natural that the bequest should be made in her name. And if we were to conclude from thence, that it was the intention to exclude the rights of the husband, there can be but few bequests to married women that would not be held to create a separate estate.
The case of Hamilton vs. Bishop, (8 Yerg. 33) is referred to in support of the complainant’s construction of this will. But there is no analogy between the two cases. In that case the negro was given to his daughter Elizabeth, “to the use and benefit of the said Elizabeth and her children, and to remain in the possession of the said Elizabeth for the use and support of the said children forever.”
*634 These' words clearly exclude the rights of the husband, and, in fact, rather vest the negro in Elizabeth Hamilton for the use and support of the children, than create an estate for her separate use.
2. It is next insisted that Mrs. McKisick only took a life estate, under this will, with the power of appointment at- her death to such of her children and grand children as she chose.
The negroes are given to her to keep either in specie, or sell, having the proceeds of the sale, “and the said negroes and their increase or the money to arise from the sale of them, to be hers forever, to be disposed of as she may think proper, amongst her children and grand children by will or otherwise.”
This clause of the will, clearly contains a gift of the absolute estate. She may sell the slaves or keep them in specie, as she may choose; and the slaves or money are to be hers forever. This is a gift of the absolute estate, in language as strong as could well be used. Nor do the subsequent expressions, in our opinion, limit or restrict its character. Having declared that the property was to be hers forever, he adds: “To be disposed of as she may think proper, amongst her children or grand children by will or otherwise.” This form of expression does not indicate, that the testator intended to limit the character of the estate he had before given, but is in fact an amplification of what had been previously said; indicating merely the children and grand children as the probable objects of his daughter’s bounty. The property having been given to Mrs. McKisick, either to keep or sell, and “to be hers forever,” without the least indication in any part of the will, that these strong expressions were to be restrained, so as to confer only a life estate, the legal consequence would be, that the estate would vest in her absolutely, although the last sentence of the clause under consideration, should be construed to be a devise of the remainder to her children and grand children.
For although it is true, that the intention of the testator is to prevail, when that intention can be carried out, consistently with the rules of law, yet if the intention be to give an unlimited estate to the first taker, the other intention to dispose of a *635 remainder, is inconsistent with the first intention and cannot prevail.
Therefore, unless the testator has shown with sufficient clearness an intention that the estate shall be preserved and at the death of his daughter shall go to her children and grand children to reduce the character of the estate before given her to an estate for life by implication, it follows, that there could be no remainder, in relation to which that devise could have effect'. So if an unlimited power of disposition be given to the first taker, no valid executory devise can be made of the same property.
In the case of Davidson vs. Richardson, (10 Yerg. R. 290,) Thomas Richardson devised to his wife Jane, all and singular his personal property, credits, household furniture and stock of all kinds “by her fully and freely to be enjoyed, during her natural life or widowhood.” Afterwards in another clause he gave to his daughters at the death of his wife, several pecuniary legacies, if there should be so much.
This court held that the devise to his wife, “fully and freely to enjoy” the property, gave to her the absolute estate. But the expressions in the will, are much more restrictive of the right of the first taker, than any that are employed in the will before us. In the case of Smith T. vs. Bell, (Mart. & Yerg. 302,) it is laid down that if the first taker has the power to sell the property and vest in the purchaser a good title, no valid executory devise can exist. Jackson vs. Bell, 10 John. R. 21: 16 John. Rep. 571.
But it cannot be doubted but that the intention of the testator, was that Mrs. McKisick should exercise an unlimited discre- ,• tion in the disposition of the property. He expressly says, she may keep it in specie or sell it and the proceeds to be hers forever.
In the case of Smith T. vs. Ball, the terms of the will much more strongly imply a limited estate in the first taker, than the words here used. And yet it was held in that case that the devise over was void. There the words were these: “I give and bequeath to my son Jesse Goodwin, my young sorrel gelding, and one feather bed, to be delivered to him by my executrix af *636 ter my decease. Also, I give to my wife Elizabeth Goodwin all my personal estate whatsoever and wheresoever, and of what nature, kind and qualities soever, after payment of all my just debts, legacies and funeral expenses, which personal estate I give and bequeath to my wife Elizabeth Goodwin, to and for her own use and benefit, and disposal absolutely. The remainder of said estate, after decease, to be for the use of the said Jesse Goodwin.”
Here is an express devise of the remainder to Jesse Goodwin, but this court said it could not have effect, because it was inconsistent with the absolute power of disposition, for her own use, conferred upon Elizabeth Goodwin. See also, David vs. Bridgman, 2 Yerg. R. 558, Pushman vs. Fillter, 3 Vez. 7, 4 Kent’s Com. 470.
In the case of Henderson vs. Vaux, (10 Yerg. R. 30) which is relied on, the property was devised to Mrs. Henderson in express words for life, and at her death she was to have ,the disposal of one half to whomsoever she thought proper, and the other half was to be divided among the testator’s brothers and sisters.
In this case the court thought from the terms of the will and the surrounding circumstances, the intention of the testator was that the power of disposition of the one half was limited to the period of her death until which time the property was to be kept together. B'ut in the case before us, there is no such restriction, either expressly or by implication.
In view of the manner in which the parties have treated this property, and the circumstances of the respective claimants, we have felt every disposition to sustain the views which the parties during the coverture probably entertained, but we have been unable to do so, without overturning well settled principles of law, repeatedly adjudicated by this court. The decree must bq affirmed.